**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| KURT BAUMBERGER, | ) | |
| | ) | Civil Action File No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| EQUIFAX INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Kurt Baumberger ("Plaintiff" or "Mr. Baumberger") files this Complaint for Equitable Relief and Damages against Defendant Equifax Inc. ("Equifax" or "Defendant") showing the Court the following:

### INTRODUCTION

1.     This is an action under Title I of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 *et seq.*, to correct unlawful employment practices on the basis of disability, to vindicate Plaintiff Baumberger's rights, and to make him whole.   Mr. Baumberger seeks injunctive and declaratory relief, back pay, reinstatement or front pay, and lost benefits, compensatory damages, and attorney's fees and costs of litigation.

2.      Mr. Baumberger brings this action because under the ADA, he had an actual impairment, a record of actual impairment, or Equifax regarded him as having an impairment for which he was terminated.

### JURISDICTION AND VENUE

3.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4.      Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendant Equifax conducts business in this district and division and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Mr. Baumberger filed a charge of discrimination with the Equal Employment Opportunity Commission on March 26, 2021, within 180 days of the occurrence of the acts of which he complains.

6.      On January 18, 2022, Mr. Baumberger received a Notice of Right to Sue from the EEOC relating to his charge of discrimination, charge number 410-2021-05371.

7.      Mr. Baumberger brings this suit within ninety (90) days of the receipt of his Notice of Right to Sue.

### THE PARTIES

8.      Mr. Baumberger is a citizen of the United States and a resident of the State of Georgia.  Mr. Baumberger submits himself to the jurisdiction of this Court.

9.      Mr. Baumberger is and, at all times relevant hereto, was an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

10.      Mr. Baumberger is a person with a disability because he has actual physical impairments – Stage 3 Esophageal Cancer – causing substantial limitations in one or more major life activities, because he has a record of impairment, and because Equifax regarded him as having an impairment.

11.      Mr. Baumberger is capable of performing the essential functions of his job with or without an accommodation.

12.      Equifax is an American multinational consumer credit reporting agency.

13.      Equifax is an employer engaged in commerce or in an industry affecting commerce within the meaning of the ADA and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding

3

calendar year.

14.     Equifax may be served with summons and a copy of the Complaint in
this action by delivering process to Corporation Service Company, 2 Sun Court,
Suite 400, Peachtree Corners, GA, 30092.

### STATEMENT OF FACTS

15.     Mr. Baumberger began employment with Equifax in December 2019
in their newly created position, Enterprise Innovative Officer within the Data &
Analytics Center of Excellence.

16.     Mr. Baumberger met all his 2020 Annual Incentive Plan deliverables
on time, including, but not limited to: (1) more than 30 COVID-19 weekly Senior
Leadership Team Equifax credit data tracking reports; (2) a USIS "Ladder Up"
Customer Opportunity Model identifying "Best In Class" performance to sell
additional Equifax data and analytics; (3) a USIS customer facing "Equifax
Academy" to accelerate adoption of Equifax data and analytics sales; (4) a GCS
"Optimal Path" product to compete with Experian Boost product; (5) six D&A
University real-time project-based innovation sessions launching more than 20
projects around the world; and (6) six patents and three whitepapers of Equifax
Intellectual Property.

17.   In February 2020, Mr. Baumberger received a diagnosis of Stage 3 Esophageal Cancer.

18.   Shortly thereafter, Mr. Baumberger notified Equifax of his cancer diagnosis.

19.   In March and April 2020, Mr. Baumberger underwent twenty-five (25) radiation treatments and five (5) chemotherapy treatments while working remotely, which was in compliance with Equifax COVID-19 policies.

20.   On June 29, 2020, Mr. Baumberger had surgery wherein his esophagus and one-third of his stomach were surgically removed.

21.   Equifax provided Mr. Baumberger with a short-term disability leave of absence to accommodate his surgery.

22.   During Mr. Baumberger's recovery, Equifax contacted him to state that he was not eligible to take leave under the FMLA and he needed to return as soon as possible.

23.   When Mr. Baumberger returned to work, his physicians recommended that he do so gradually.

24.     Mr. Baumberger's medical oncologist recommended that Mr. Baumberger return to working at a 50% level through early October 2020, at a 75% level through November 1, 2020, and then at a 100% level for the time thereafter.

25.     Mr. Baumberger submitted these recommendations to his manager, Chief Data and Analytics Officer, Mr. Prasanna Dhore, to the D&A Human Resources Manager, Ms. Judy Mar, and to Equifax's Short-Term Disability vendor, Lincoln Financial.

26.     Though Equifax nominally approved Mr. Baumberger's request for accommodations, Equifax required Mr. Baumberger to quickly began working at a 100% level after his return on September 14, 2020.

27.     Equifax did not reduce Mr. Baumberger's duties to account for his gradual return schedule and instead required him to complete 100% of the duties he was assigned prior to his medical leave.

28.     Mr. Baumberger asked Mr. Dhore what changes would be made to accommodate his return to work and Mr. Dhore stated that nothing would change. Mr. Dhore even suggested that Mr. Baumberger would actually need to work faster on at least one project.

6

29.   Within a week of returning to work, Mr. Baumberger spoke with Mr. Dhore about his health and treatment.

30.   Mr. Dhore asked Mr. Baumberger about the results of his latest scan and the likelihood of a recurrence.

31.   Mr. Baumberger told Mr. Dhore that his latest scan on September 10, 2020 showed no indication of cancer.

32.   Mr. Dhore asked Mr. Baumberger what his prognosis was, and Mr. Baumberger responded that a typical prognosis for a stage three esophageal cancer patient was a 75% chance of cancer recurrence and a 50% survival rate over the next five years.

33.   Mr. Dhore took notes of his conversation with Mr. Baumberger.

34.   In mid-November 2020, Mr. Baumberger notified Mr. Dhore that he would be undergoing another quarterly cancer scan on December 7, 2020 which would indicate any cancer recurrence.

35.   Mr. Dhore notified Mr. Baumberger that he was terminated on December 3, 2020, just days before he would receive the results of his cancer scan.

36.   When Mr. Dhore terminated Mr. Baumberger, he stated that the termination had nothing to do with Mr. Baumberger's performance.

37.    Mr. Dhore explained that Mr. Baumberger's position, which had been created just one year prior, was being eliminated to "remove one layer of management."

38.    On December 4, 2020, Mr. Dhore announced to members of the Enterprise Innovation Office that he was planning on asking the CEO to create two Vice President positions to help fill Mr. Baumberger's eliminated role.

39.    Mr. Dhore did not offer Mr. Baumberger one of the new Vice President positions.

40.    Equifax did not offer Mr. Baumberger any position within the company, despite the existence of open positions fitting Mr. Baumberger's skill set.

## COUNT I
## Violation of ADA – Regarded As Disabled

41.    Mr. Baumberger incorporates by reference all of the preceding paragraphs of the Complaint.

42.    At all times relevant hereto, Equifax has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

43.     At all times relevant hereto, Mr. Baumberger was an individual with a disability as defined under the ADA, 42 U.S.C. § 12102 (1)(C) because Equifax regarded him as a person with an impairment as defined by the Act.

44.     Moreover, at all times relevant hereto, Mr. Baumberger has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of the job.

45.     Equifax terminated Mr. Baumberger's employment three months after Mr. Baumberger informed his supervisor, Mr. Dhore, that there was a 75% chance of cancer recurrence and a 50% survival rate, less than one month after Mr. Baumberger informed Mr. Dhore of his quarterly cancer scan, and just days before Mr. Baumberger's cancer scan.

46.     Equifax claims it eliminated Mr. Baumberger's position despite creating it just one year prior.

47.     Equifax terminated Mr. Baumberger because it regarded him as disabled.

48.     Equifax's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

9

49.     As a direct and proximate result of Equifax's intentional discrimination, Mr. Baumberger has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of salary, performance incentives, deferred compensation, and other job-related benefits, including social security, life insurance, health care insurance, all in an amount to be established at trial.

50.     Equifax's actions have caused and continue to cause Mr. Baumberger to suffer damages for garden variety emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

### COUNT II
### <u>Violation of ADA – Actual Discrimination</u>

51.     Mr. Baumberger incorporates by reference all of the preceding paragraphs of the Complaint.

52.     At all times relevant hereto, Equifax has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

53.     At all times relevant hereto, Mr. Baumberger was an individual with a

disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

54.    Equifax was aware of Mr. Baumberger's disability.

55.    At all times relevant hereto, Mr. Baumberger has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of his job.

56.    Mr. Baumberger's disability substantially limits one or more major life activities.

57.    Equifax terminated Mr. Baumberger's employment three months after Mr. Baumberger informed his supervisor, Mr. Dhore, that there was a 75% chance of cancer recurrence and a 50% survival rate, less than one month after Mr. Baumberger informed Mr. Dhore of his quarterly cancer scan, and just days before Mr. Baumberger's cancer scan.

58.    Equifax claims it eliminated Mr. Baumberger's position despite creating it just one year prior.

59.    Equifax terminated Mr. Baumberger because of his disability.

60.    Equifax's actions are a violation of Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

61.    As a direct and proximate result of Equifax's intentional discrimination,

11

Mr. Baumberger has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of salary, performance incentives, deferred compensation, and other job-related benefits, including social security, life insurance, health care insurance, all in an amount to be established at trial.

62.    Equifax's actions have caused, continue to cause, and will cause the Mr. Baumberger to suffer damages for garden variety emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT III
## Violation of ADA – Record of Disability

63.    Mr. Baumberger incorporates by reference all of the preceding paragraphs of the Complaint.

64.    At all times relevant hereto, Equifax has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

65.    At all times relevant hereto, Mr. Baumberger was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

66.     Equifax was aware of Mr. Baumberger's history and record of disability.

67.     At all times relevant hereto, Mr. Baumberger has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111 (8) and able to perform the essential functions of his job.

68.     Mr. Baumberger's disability substantially limits one or more major life activities.

69.     Equifax terminated Mr. Baumberger's employment three months after Mr. Baumberger informed his supervisor, Mr. Dhore, that there was a 75% chance of cancer recurrence and a 50% survival rate, less than one month after Mr. Baumberger informed Mr. Dhore of his quarterly cancer scan, and just days before Mr. Baumberger's cancer scan.

70.     Equifax claims it eliminated Mr. Baumberger's position despite creating it just one year prior.

71.     Equifax terminated Mr. Baumberger because of his record of disability.

72.     Equifax's actions are a violation of Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

73.     As a direct and proximate result of Equifax's intentional discrimination,

13

Mr. Baumberger has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of salary, performance incentives, deferred compensation, and other job-related benefits, including social security, life insurance, health care insurance, all in an amount to be established at trial.

74.     Equifax's actions have caused, continue to cause, and will cause the Mr. Baumberger to suffer damages for garden variety emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT IV
## Failure to Accommodate in Violation of the ADA

75.     Mr. Baumberger incorporates by reference all the preceding paragraphs of this Complaint.

76.     At all times relevant hereto, Equifax has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADAAA.

77.     At all times relevant hereto, Mr. Baumberger was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1)(A).

78.     Equifax was aware of Mr. Baumberger's disabilities and record of disability.

79.     At all times relevant hereto, Mr. Baumberger has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of his job.

80.     Mr. Baumberger's disability substantially limits one or more major life activities.

81.     Mr. Baumberger requested an accommodation from Equifax relating to his disability including modifying his work schedule and duties.

82.     Equifax refused to accommodate Mr. Baumberger and, instead, required him to work his full duties and, ultimately, terminated his employment because of his disability.

83.     Equifax terminated Mr. Baumberger's employment three months after Mr. Baumberger informed his supervisor, Mr. Dhore, that there was a 75% chance of cancer recurrence and a 50% survival rate, less than one month after Mr. Baumberger informed Mr. Dhore of his quarterly cancer scan, and just days before Mr. Baumberger's cancer scan.

84.     Equifax's actions are a violation of Section 102 of the ADA, 42 U.S.C.

§ 12112, which prohibits discrimination on the basis of disability and requires reasonable accommodation for disabilities.

85.     As a direct and proximate result of Equifax's intentional discrimination, Mr. Baumberger has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of salary, performance incentives, deferred compensation, and other job-related benefits, including social security, life insurance, health care insurance, all in an amount to be established at trial.

86.     Equifax's actions have caused, continue to cause, and will cause the Mr. Baumberger to suffer damages for garden variety emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT V
## Retaliation in Violation of the ADA

87.     Mr. Baumberger incorporates by reference all the preceding paragraphs of the Complaint.

88.     At all times relevant hereto, Equifax has been subject to the requirements of Title I of the ADA.

16

89.     At all times relevant hereto, Mr. Baumberger was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

90.     In June 2020, Mr. Baumberger engaged in protected activity under the ADA when he requested a leave of a definite duration.

91.     In September 2020, Mr. Baumberger engaged in additional protected activity when he requested an accommodation of limited work levels through November 1, 2020.

92.     Equifax terminated Mr. Baumberger's employment less than three months after Mr. Baumberger returned to work and requested an accommodation.

93.     Equifax claims it eliminated Mr. Baumberger's position despite creating it just one year prior.

94.     Equifax's actions in retaliating against Mr. Baumberger following his requests for leave of a definite duration and for reasonable accommodations were committed with reckless disregard for his right to be free from discriminatory treatment.

95.     The effect of Equifax's above-mentioned conduct has been to deprive Mr. Baumberger of equal employment opportunities and benefits.

96.     The actions taken against Mr. Baumberger by Equifax have caused him

17

to suffer both monetary and non-monetary damages.

97.     Accordingly, Mr. Baumberger is entitled to the equitable and monetary relief set forth in the following prayer for relief for Equifax's violation of his rights under the ADA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

(a)     Issue a declaratory judgment that Equifax's acts, policies, practices, and procedures complained of herein violated Mr. Baumberger's rights as secured under the ADA;

(b)     Grant to Mr. Baumberger judgment in his favor and against Equifax under all counts of this Complaint;

(c)     Order Equifax to make Mr. Baumberger whole by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation salary, performance incentives, deferred compensation, and other job related benefits, including social security, life insurance, health care insurance, denied or lost as a result of Equifax's unlawful and

discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(d)     Order that Mr. Baumberger be awarded front pay or that Equifax reinstate him;

(e)     Order Equifax to compensate Mr. Baumberger for mental and emotional damages suffered as a result of Equifax's unlawful and discriminatory acts;

(f)     Grant to Mr. Baumberger a jury trial on all issues so triable;

(g)     Grant to Mr. Baumberger his reasonable attorney's fees and reasonable expert witness fees together with any and all other costs associated with this action as provided by 42 U.S.C. § 12117 (a) (as amended); and

(h)     Grant such additional monetary and equitable relief as the Court deems proper and just.

Respectfully submitted this 25th day of February, 2022.

LEGARE, ATTWOOD & WOLFE, LLC

s/ Eleanor M. Attwood
Eleanor Mixon Attwood
Georgia Bar No. 514014
emattwood@law-llc.com
Marissa R. Torgerson

19

Georgia Bar No. 848356
mrtorgerson@law-llc.com

Decatur Town Center Two
125 Clairemont Avenue, Suite 380
Decatur, GA 30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212